WALTER B. GREEN, ADMINISTRATOR OF THE ESTATE OF MILLARD D. OLDS, DECEASED, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78511. Promulgated March 31, 1937.

*Raymond H. Berry, Esq., Ralph W. Barbier, Esq.,* and *Arthur L. Evely, Esq.,* for the petitioner.
*John W. Pigg, Esq.,* for the respondent.

OPINION.

ARUNDELL: The petitioner is executor of the estate of Millard D. Olds, deceased, who, prior to his death, filed the original petition herein to review an income tax deficiency amounting to $4,335.83 for the year 1930. The issue is whether or not the respondent erred in his application of the "first in, first out" rule to determine profit from the sale of corporate stock carried on margin with a broker so as to include other shares of the same stock deposited with the broker to support that margin account.

The decedent was a member of the partnership of M. D. Olds & Co., which was engaged principally in the coal business at Cheboygan, Michigan. This firm also engaged extensively in stock market trading. Its business was conducted on the basis of a fiscal year ending July 31. On June 15, 1929, the partnership owned outright 7,186 shares of the stock of the United States Steel Corporation which it had acquired at a cost of $77.464 per share. Prior to September 30, 1929, the partnership carried no account in stock of the

United States Steel Corporation with its broker, but on that date it purchased upon margin through the brokerage firm of Bennett, Smith & Co., of Detroit, 2,800 of such shares in lots and at prices as follows: 1,000 shares, $224,300; 100 shares, $22,492.50; 400 shares, $90,020; 500 shares, $112,650; 300 shares, $67,665; 500 shares, $112,775. Following these purchases, the partnership delivered to its brokers certificates representing 700 shares of United States Steel stock on November 15, 1929, and certificates for 1,000 additional shares of the same stock on December 27, 1929. These deliveries were made for the purpose of supporting the partnership margin account. These shares were drawn from the partnership purchases made prior to June 15, 1929, and the certificates representing them were endorsed in blank by the partnership. The partnership account was not in need of support at the time of these deliveries, but the shares were so deposited with the understanding that they were to be used in support of the partnership account at such time as, and provided, such support was required. Upon receipt, the certificates were placed in the brokerage firm's vault for safekeeping. Subsequently, on or about March 25, 1930, the partnership account became in need of some support, but to what extent the record fails to show. On March 25, 1930, Bennett, Smith & Co. delivered to a New York brokerage firm the 1,700 share certificates deposited by the partnership. That delivery was made in response to a call from the New York firm for additional margin to support Bennett, Smith & Co.'s account. In the meantime, the brokers made certain sales and purchases from and to the account of the partnership's marginal account carried with it. The first transaction consisted of two sales of 1,000 shares, each made on the respective dates of February 5 and 18, 1930, at lot prices of $184,710 and $188,710, respectively. A third sale of 1,000 shares at the price of $193,710 was made on March 31, 1930. These sales were followed with purchases of 3,000 shares of the same stock made as follows: On February 19 two lots of 1,000 shares each were bought at $187,250 and $186,250, respectively; on February 20, 1,000 more shares were purchased at the price of $184,250; on April 9, 500 shares were purchased at $97,125; and on April 29, 1,000 shares were purchased for $185,250. The sales were made without specific direction or order from the partnership identifying the shares to be sold.

In computing the partnership profits from the sales made from its marginal account the respondent applied the first in, first out rule to determine the basis for the shares sold. In applying this rule to the 1,000 shares sold on March 31, 1930, the respondent treated the partnership's 1,700 shares deposited as collateral with the brokers as first in stock, and used the cost of that stock as the basis for the stock sold. The petitioner contends that this treatment of the collateral

stock was error. He argues that such stock was in no sense ever commingled with the margin account so as to lose its identity in that mass from which sales were made. He also contends that, if technically considered that the stock ever was so commingled, it was removed from that mass when taken out of the brokers' vaults and sent to the New York brokers on March 25, 1930.

The respondent concedes that the collateral stock could not be subject to sale before March 25, 1930, because prior to that date the partnership account was in no need of support. He argues, however, that on the instant the account became "in need of support" the pledged stock became a mere credit on the brokers' books and subject to sale in common with the margin stock.

Stated simply, the question for decision is this: Can the 1,000 shares of stock sold on March 31, 1930, be identified as shares other than the 1,700 shares of first in stock which were pledged as security for the margin account, there being no identifying instructions to the brokers?

The 1,700 shares deposited as security were at the time of deposit owned outright by the Olds partnership and the certificates therefor were not fungible, but were identifiable property. But when they were deposited as collateral, they became fungibles; the right of substitution of certificates then arose; they became subject to the brokers' lien for repayment of advances, commissions, and interest; they became subject to the right of rehypothecation.[1] If the shares can be regarded as identifiable until March 25, 1930, by reason of the certificates being in the brokers' vault, they lost their identity at that time. The stipulation is that at that time the margin account needed support. At that time, if not before, the certificates became fungibles and subject to the several rights that marginal security has in the hands of brokers. There are, of course, limitations on the rights of brokers over pledged stock. For instance, the broker can not sell marginal account security without a prior demand for additional margin. *White* v. *Slayback*, 179 N. Y. S. 211. However, there is no such situation here. The partnership directed a sale of United States Steel stock without identification of shares. The fact of delivery of the certificates covering the shares deposited as collateral by the partnership's broker to a New York broker does not operate to preserve the identity of those shares. To so hold would indeed require not merely the preservation of identity, but reestablishing it after it was lost through use of the shares by the partnership's broker as collateral for the margin account. There is no showing that the partnership's broker did not sell those shares

---

[1] See Meyer's Law of Stock Brokers and Stock Exchanges, pp. 297, 313, 322, 331.

through the New York broker when the partnership gave the order to sell. Those shares, equally with the other shares then in the partnership account, were available for sale and no segregation was made either by the partnership in its instructions to the brokers or by the brokers in making the sale. There was, then, no identification and the first in, first out rule applies.

The petitioner further contends that if the first in, first out rule is to be applied at all, it should be applied according to the separate deposit theory of the case of *Bancitaly Corporation*, 34 B. T. A. 494. That is, where the evidences of share ownership are in different depositaries, that upon sale from any particular depositary the first in stock in that depositary should be treated as the first sold. The principle of the *Bancitaly* case does not extend as far as the petitioner contends. The respondent has applied here the principle for which the case stands, namely, he has separated the stock held by the partnership from that held by its broker. He has treated the sales made in 1930 through the broker as being made from shares held by the broker and not from the earlier acquired shares the certificates for which were in the hands of the partnership. It is pointed out in the *Bancitaly* case that the respondent had attempted to treat all sales as though made from a common location. Here he has not done so; he has given effect to the physical separation of the blocks of securities. We accordingly sustain the respondent in his treatment of the 1,000 shares sold on March 31, 1930, as being part of the 1,700 shares of first in stock deposited by the partnership with its brokers.

*Decision will be entered under Rule 50.*